UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
UNITED STATES OF AMERICA
*ex rel.* FNU-LNU, LLC, and on behalf of the STATE
OF NEW YORK,

                            Plaintiffs,

   v.

NEW YORK CARDIOLOGY, PC
and GHANSHYAM BHAMBHANI,

                         Defendants.
---------------------------------------------------------------X

STIPULATION AND ORDER

Civil Action No. 14-4581
(CBA)(SMG)

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS") and the Office of Personnel Management, Office of Inspector General ("OPM-OIG"), which administers the Federal Employees Health Benefits Program ("FEHBP") (collectively, the "United States"); the State of New York (the "State"), acting through the New York State Office of the Attorney General, Medicaid Fraud Control Unit ("MFCU"); New York Cardiology, PC ("NY Cardiology") and Ghanshyam Bhambhani ("Bhambhani") (collectively, the "Defendants"); and FNU-LNU, LLC ("Relator") (hereinafter, all of the above are collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.    Defendant Ghanshyam Bhambhani was previously a physician practicing medicine in the Eastern District of New York. In 2018, he was convicted on a guilty plea of one count of

1 of 16

conspiracy to pay healthcare kickbacks and sentenced to 34 months in prison and three years of supervised release. Prior to his incarceration, he was a resident of Valley Stream, New York.

B. Defendant NY Cardiology was Defendant Bhambhani's medical practice, located in Ozone Park, New York.

C. On or about July 31, 2014, Relator filed an action in the United States District Court for the Eastern District of New York captioned *United States ex rel. FNU-LNU, LLC v. New York Cardiology, PC and Ghanshyam Bhambhani*, 14-cv-4581 (EDNY) (the "Civil Action") pursuant to the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3730(b) and the New York False Claims Act ("NYFCA"), N.Y. State Fin. Law § 190(2). Relator alleged that Defendants violated the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) ("AKS") through an unlawful rental arrangement with referring physicians and generated false claims for cardiac procedures using fraudulent documentation, thereby defrauding the Medicare and Medicaid programs. The United States and the State intervened in the Civil Action.

D. The United States and State contend Bhambhani submitted or caused NY Cardiology to submit false claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 ("Medicare"); the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid"); and the FEHBP, 5 U.S.C. §§ 8901-8914.

E. The United States and the State contend that they have certain civil claims against NY Cardiology and Bhambhani arising from falsified records and unlawful kickback arrangements with referring physicians during the period from January 1, 2010 through July 31, 2017. Specifically, the United States and the State contend that Bhambhani falsified records to justify cardiac procedures and provided compensation to certain physicians, disguised as rent, which was actually compensation for referrals of patients to Defendants.

2 of 16

*U.S. ex rel. FNU LNU LLC vs. New York Cardiology, P.C. et al.* 14-CV-4581
Stipulation and Order

    a. The United States further contends that because of the falsified records and the AKS violations, Bhambhani and NY Cardiology violated the FCA by knowingly submitting, or causing to be submitted, false claims to the Medicare, FEHB and Medicaid programs for services rendered by him and his employees; and

    b. The State further contends that because of the falsified records and the AKS violations, Bhambhani and NY Cardiology violated the NYFCA, by knowingly submitting, or causing to be submitted, false claims to the Medicaid program for services rendered by him and his employees.

    c. The conduct described in Paragraph E and its subparagraphs is referred to below as the "Covered Conduct."

F. Defendants admit they engaged in the Covered Conduct, for which they are liable to the United States under the FCA and to the State under the NYFCA.

G. Relator claims entitlement under 31 U.S.C. § 3730(d) and N.Y. State Fin. Law §§ 190(6) and (7) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

H. Defendants wish to resolve their liability for the Covered Conduct, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1. Bhambhani, on behalf of himself and NY Cardiology, shall pay to the United States and the State a total of Two Million dollars ($2,000,000) (referred to herein as the "Total

3 of 16

*U.S. ex rel. FNU LNU LLC vs. New York Cardiology, P.C. et al.*  14-CV-4581
Stipulation and Order

Settlement Amount"), of which Seven Hundred Eighty Two Thousand Six Hundred Thirty Five Dollars and Seventeen Cents ($782,635.17) is restitution.

    2.    Bhambhani shall pay the Total Settlement Amount as follows:

        a. Bhambhani shall pay to the United States One Million Three Hundred Seventy Thousand Two Hundred Ninety Four dollars and Fifty Cents ($1,370,294.50) ("Federal Settlement Amount"), no later than ten (10) days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions provided by the Office of the United States Attorney for the Eastern District of New York. Of the Federal Settlement, $419,803.66 represents the federal Medicaid settlement share.

        b. Bhambhani shall pay to the State Six Hundred Twenty Nine Thousand Seven Hundred Five dollars and Fifty cents ($629,705.50) ("State Settlement Amount"), no later than ten (10) days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions provided by MFCU. The State Settlement Amount represents the State Medicaid share of the Total Settlement Amount.

    3.    In the event that Bhambhani fails to pay any amount as provided in Paragraph 2a. above, within five (5) business days of the date on which such payment is due, both Defendants shall be in default of this Agreement ("Default"). The United States will provide notice of the Default to Defendants and Defendants shall have the opportunity to cure such Default within five (5) business days from the date of the notice. Notice of Default shall be provided to counsel for Defendants. If Defendants fail to cure such Default within five (5) business days of receiving the Notice of Default ("Uncured Default"), the remaining unpaid balance of the Federal Settlement

4 of 16

*U.S. ex rel. FNU LNU LLC vs. New York Cardiology, P.C. et al.* 14-CV-4581
Stipulation and Order

Amount shall become immediately due and payable, and interest shall accrue at the rate of 12% per annum compounded daily from the date of Default on the remaining unpaid total (principal and interest balance). Upon an Uncured Default, the United States, at its sole option, may: (a) offset the remaining unpaid balance from any amounts due and owing to Defendants by any department, agency, or agent of the United States; (b) collect the entire unpaid balance of the Federal Settlement Amount, plus interest, including 12% interest from the date of Default, and all other amounts due upon the event of Default as specified in this paragraph; (c) file a civil action for the Covered Conduct; or (d) exercise any other rights granted by law or in equity, including referral of this matter for private collection. In the event a complaint is filed pursuant to subsection (b) or (c) of this paragraph, Defendants agree not to contest it in any way. Defendants further agree not to contest any consent judgment, offset, recoupment, and/or collection action undertaken by the United States pursuant to this paragraph, either administratively or in any state or federal court. Bhambhani shall pay to the United States all reasonable costs of collection and enforcement under this paragraph, including attorneys' fees and expenses.

4. In the event that Bhambhani fails to pay any amount as provided in Paragraph 2b. above, within five (5) business days of the date on which such payment is due, both Defendants shall be in Default of this Agreement. The State will provide written notice of the Default to Defendants and Defendants shall have the opportunity to cure such Default within five (5) business days from the date of receipt of the notice. Notice of Default will be delivered to counsel for Defendants. In the event of an Uncured Default, the remaining unpaid balance of the State Settlement Amount, shall become immediately due and payable, and interest shall accrue at the rate of 12% per annum compounded daily from the date of Default on the remaining unpaid total (principal and interest balance). Upon an Uncured Default, the State, at its sole option, may: (a)

5 of 16

*U.S. ex rel. FNU LNU LLC vs. New York Cardiology, P.C. et al.* 14-CV-4581
Stipulation and Order

offset the remaining unpaid balance from any amounts due and owing to Defendants by any department, agency, or agent of the State at the time of Default; (b) collect the entire unpaid balance of the State Settlement Amount, plus interest, including 12% interest from the date of Default, and all other amounts due upon the event of Default as specified in this paragraph; (c) file a civil action for the Covered Conduct; or (d) exercise any other rights granted by law or in equity, including referral of this matter for private collection. In the event a complaint is filed pursuant to subsection (c) of this paragraph, Defendants agree not to contest it in any way. Defendants further agree not to contest any consent judgment, offset, recoupment, and/or collection action undertaken by the State pursuant to this paragraph, either administratively or in any state or federal court. Bhambhani shall pay to the State all reasonable costs of collection and enforcement under this paragraph, including attorneys' fees and expenses.

5.  Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

6.  The United States and the State agree to pay Relator nineteen percent (19%) of the Total Settlement Amount pursuant to the following conditions:

    a. Conditioned upon the United States receiving the Federal Settlement Amount from Bhambhani and as soon as feasible after receipt, the United States shall pay to Relator $260,355.96 by electronic funds transfer, pursuant to written instructions provided by counsel for Relator.

6 of 16

*U.S. ex rel. FNU LNU LLC vs. New York Cardiology, P.C. et al.* 14-CV-4581
Stipulation and Order

    b.    Conditioned upon the State receiving the State Settlement Amount from Bhambhani and as soon as feasible after receipt, the State shall pay $119,644.04 to Relator by check, pursuant to written instructions provided by counsel for Relator.

7.    Bhambhani shall pay $23,000 to Relator for expenses and attorney's fees and costs.

8.    Subject to the exceptions in Paragraph 10 (concerning excluded claims) below, and conditioned upon Bhambhani's full payment of the Federal Settlement Amount, the United States releases NY Cardiology and Bhambhani from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

9.    Subject to the exceptions in Paragraph 10 (concerning excluded claims) below, and conditioned upon Bhambhani's full payment of the State Settlement Amount, the State releases NY Cardiology and Bhambhani from any civil monetary claim the State has for the Covered Conduct under the New York False Claims Act, N.Y. State Fin. Law §§ 187 et seq.; Social Services Law § 145-b, or any other state law, or common law or equity, including equitable theories of payment by mistake, unjust enrichment, and fraud.

10.    Notwithstanding the releases given in Paragraphs 8 and 9 of this Agreement, or any other term of this Agreement, the following claims of the United States and State are specifically reserved and are not released:

    a.    Any liability arising under Title 26, U.S. Code (Internal Revenue Code) or the New York Tax Law;

7 of 16

*U.S. ex rel. FNU LNU LLC vs. New York Cardiology, P.C. et al.*  14-CV-4581
Stipulation and Order

  b. Any criminal liability;

  c. Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal health care programs and the Medicaid program;

  d. Any liability to the United States (or its agencies) or to the State (or its agencies) for any conduct other than the Covered Conduct;

  e. Any liability based upon obligations created by this Agreement; and

  f. Any liability of other individuals not a party to this Agreement.

11. Conditioned upon Bhambhani's full payment of the Total Settlement Amount, Relator, for itself and for its heirs, successors, attorneys, agents, and assigns, releases NY Cardiology and Bhambhani from any civil monetary claim the Relator has or may have for itself or on behalf of the United States or the State for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733 or the New York False Claims Act, N.Y. State Fin. Law §§ 187 et seq.

12. Relator and its heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B) and N.Y. State Fin. Law § 190(5)(b)(ii). Conditioned upon Relator's receipt of the payments described in Paragraphs 7 and 8 above, Relator and its heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States and the State, and their respective agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730 or N.Y. State Fin. Law § 190, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

13. NY Cardiology and Bhambhani fully and finally release the Relator from any

8 of 16

*U.S. ex rel. FNU LNU LLC vs. New York Cardiology, P.C. et al.* 14-CV-4581
Stipulation and Order

claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the Relator, related to the filing of the Civil Action and the Relator's investigation and prosecution thereof.

14. Relator, for itself, and for its heirs, successors, attorneys, agents, and assigns, releases Defendants from any liability to Relator arising from the filing of the Civil Action, and under 31 U.S.C. § 3730(d) for expenses or attorney's fees and costs.

15. Defendants fully and finally release the United States, the State, and their respective agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, the State, or their respective agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' and the State's investigation and prosecution thereof.

16. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier), FEHBP, or any state payer, related to the Covered Conduct; and Defendants agree not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agree not to appeal any such denials of claims, and agree to withdraw any such pending appeals.

17. Defendants agree to the following:

    a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives

9 of 16

*U.S. ex rel. FNU LNU LLC vs. New York Cardiology, P.C. et al.* 14-CV-4581
Stipulation and Order

promulgated thereunder) incurred by or on behalf of NY Cardiology, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1) the matters covered by this Agreement and any related plea agreement;

(2) the United States' and the State's audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

(3) Defendants investigation, defense, and corrective actions undertaken in response to the United States' and State's audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4) the negotiation and performance of this Agreement and any Plea Agreement; and

(5) the payments Bhambhani makes to the United States and State pursuant to this Agreement and any payments that Bhambhani may make to Relator, including costs and attorney's fees,

are unallowable costs for government contracting purposes and under the Medicare Program and Medicaid Program (hereinafter referred to as "Unallowable Costs").

b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by NY Cardiology, and NY Cardiology shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by NY Cardiology or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

10 of 16

*U.S. ex rel. FNU LNU LLC vs. New York Cardiology, P.C. et al.* 14-CV-4581
Stipulation and Order

c.  Treatment of Unallowable Costs Previously Submitted for Payment: NY Cardiology further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by NY Cardiology or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs.  NY Cardiology agrees that the United States and the State, at a minimum, shall be entitled to recoup from NY Cardiology any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States or the State pursuant to the direction of the Department of Justice and/or the affected agencies. The United States and the State reserve their rights to disagree with any calculations submitted by NY Cardiology or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on NY Cardiology or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

d.  Nothing in this Agreement shall constitute a waiver of the rights of the United States and the State to audit, examine, or re-examine Defendants' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

18.     Defendants agree to cooperate fully and truthfully with the United States' and

11 of 16

U.S. ex rel. FNU LNU LLC vs. New York Cardiology, P.C. et al.  14-CV-4581
Stipulation and Order

State's investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Defendants shall encourage, and agree not to impair, the cooperation of their directors, officers, and employees, and shall use their best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Defendants further agree to furnish to the United States and State, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

19. Bhambhani expressly warrants that he has reviewed his financial situation and that he is currently solvent within the meaning of 11 U.S.C. § 547(b)(3), and that he currently believes he will remain solvent following his payment of the Total Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Defendants, within the meaning of 11 U.S.C. § 547(c)(1), and (b) have concluded that these mutual promises, covenants, and obligations do, in fact, constitute, such contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Defendants were or became indebted to on or after the date of this transfer, all within the meaning of 11 U.S.C. § 548(a)(1).

20. This Agreement is intended to be for the benefit of the Parties only. The Parties do

12 of 16

*U.S. ex rel. FNU LNU LLC vs. New York Cardiology, P.C. et al.* 14-CV-4581
Stipulation and Order

not release any claims against any other person or entity, except to the extent provided for in Paragraph 21 (waiver for beneficiaries paragraph), below.

21. Defendants agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

22. Upon receipt of the payment described in Paragraphs 1, 2, and 3, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).

23. Each party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

24. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

25. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Eastern District of New York. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any party for that reason in any subsequent dispute.

26. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

27. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

28. This Agreement may be executed in counterparts, each of which constitutes an

13 of 16

*U.S. ex rel. FNU LNU LLC vs. New York Cardiology, P.C. et al.* 14-CV-4581
Stipulation and Order

original and all of which constitute one and the same Agreement.

29. This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

30. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

31. All parties consent to the United States' and State's disclosure of this Agreement, and information about this Agreement, to the public. Defendants' agree not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any finding in this Agreement or creating the impression that this Agreement is without factual basis.

32. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

### THE UNITED STATES OF AMERICA

SETH D. DuCHARME
Acting United States Attorney

DATED: _____   BY: _____
LISA KUTLIN
Digitally signed by LISA KUTLIN
Date: 2020.08.07 11:33:59 -04'00'

Lisa D. Kutlin
Assistant United States Attorney
Eastern District of New York

DATED: _____   BY: _____
Lisa M. Re
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

DATED: _____   BY: _____
Edward M. DeHarde
Digitally signed by Edward M. DeHarde
DN: cn=Edward M. DeHarde, o=Federal Employees Insurance Operations, ou=Healthcare and Insurance, email=Edward.DeHarde@opm.gov, c=US
Date: 2020.08.05 10:38:06 -04'00'

Edward M. DeHarde
Assistant Director of Federal Employee Insurance
  Operations
United States Office of Personnel Management

14 of 16

original and all of which constitute one and the same Agreement.

29. This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

30. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

31. All parties consent to the United States' and State's disclosure of this Agreement, and information about this Agreement, to the public. Defendants' agree not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any finding in this Agreement or creating the impression that this Agreement is without factual basis.

32. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

**THE UNITED STATES OF AMERICA**

SETH D. DuCHARME
Acting United States Attorney

DATED: _____   BY: _____
Lisa D. Kutlin
Assistant United States Attorney
Eastern District of New York

DATED: 08/07/2020   BY: *Lisa M. Re*
Lisa M. Re
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

DATED: _____   BY: _____
Edward M. DeHarde
Assistant Director of Federal Employee Insurance
  Operations
United States Office of Personnel Management

14 of 16

*U.S. ex rel. FNU LNU LLC vs. New York Cardiology, P.C. et al.* 14-CV-4581
Stipulation and Order

## THE STATE OF NEW YORK

        LETITIA JAMES
        Attorney General of the State of New York

DATED: August 4, 2020  BY: _/s/ Jill D. Brenner_
        Jill D. Brenner
        Special Assistant Attorney General

### Ghanshyam Bhambhani - DEFENDANT

DATED: _____  BY: _____
        Ghanshyam Bhambhani

DATED: _____  BY: _____
        Ilene Jaroslaw, Esq.
        PHILLIPS NIZER LLP
        Counsel for Ghanshyam Bhambhani

### New York Cardiology, PC - DEFENDANT

DATED: _____  BY: _____
        Ghanshyam Bhambhani

DATED: _____  BY: _____
        Ilene Jaroslaw, Esq.
        PHILLIPS NIZER LLP
        Counsel for New York Cardiology, PC

15 of 16

*U.S. ex rel. FNU LNU LLC vs. New York Cardiology, P.C. et al.* 14-CV-4581
Stipulation and Order

### THE STATE OF NEW YORK

LETITIA JAMES
Attorney General of the State of New York

DATED: _____  BY: _____
Jill D. Brenner
Special Assistant Attorney General

### Ghanshyam Bhambhani - DEFENDANT

DATED: 7/31/20  BY: _____
Ghanshyam Bhambhani

DATED: 8/5/2020  BY: _____
Ilene Jaroslaw, Esq.
PHILLIPS NIZER LLP
Counsel for Ghanshyam Bhambhani

### New York Cardiology, PC - DEFENDANT

DATED: 7/31/20  BY: _____
Ghanshyam Bhambhani

DATED: 8/5/2020  BY: _____
Ilene Jaroslaw, Esq.
PHILLIPS NIZER LLP
Counsel for New York Cardiology, PC

15 of 16

U.S. ex rel. FNU LNU LLC vs. New York Cardiology, P.C. et al.   14-CV-4581
Stipulation and Order

<u>**FNU-LNC, LLC - RELATOR**</u>

DATED: 7/31/20    BY: _____
                       Geoffrey Kaiser, Esq.
                       Counsel for FNU-LNU, LLC


<u>SO ORDERED</u>:
Brooklyn, New York

August 28      , 2020


  /s/ Carol Bagley Amon
_____
HONORABLE CAROL BAGLEY AMON
United States District Judge, E.D.N.Y.

16 of 16

*U.S. ex rel. FNU LNU LLC vs. New York Cardiology, P.C. et al.* 14-CV-4581
Stipulation and Order